**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JAMES L. LEARY,

            **Plaintiff,**

      **v.**

COMMISSIONER OF SOCIAL
SECURITY,

           **Defendant.**

**Case No. 2:15-cv-2645**

**Chief Judge Edmund A. Sargus, Jr.**

**Magistrate Judge Elizabeth P. Deavers**

**REPORT AND RECOMMENDATION**

Plaintiff, James L. Leary, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 19), and the administrative record (ECF No. 9). Plaintiff did not file a Reply in this matter. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's non-disability finding.

## I.    BACKGROUND

Plaintiff previously received child disability and Social Security Income benefits with an onset date of November 1, 1997. Those benefits ceased on March 5, 2008. (R. at 13.) In the instant matter, Plaintiff filed his application for benefits on January 18, 2011, alleging that he has been disabled since November 1, 1997. (R. at 166-67, 168-173.) Plaintiff alleges disability from a kidney transplant, depression, hearing difficulties, cataract surgery, and osteoporosis. (R. at

1

61.) Plaintiff's applications were denied initially and upon reconsideration. (R. at 112-114, 115-117, 121-123, 124-126.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 127-129.)

Administrative Law Judge Robert Senander ("ALJ") held a hearing on February 6, 2013, at which Plaintiff, represented by counsel, appeared and testified. (R. at 26-58.) Vocational Expert Michael Klein (the "VE") also appeared and testified. (*Id*.) On February 12, 2013, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-21.) On May 26, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-4.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II.   HEARING TESTIMONY

### A.  Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he was enrolled in learning disability classes the entire time he was in school and left school in the tenth grade due to weakness arising from kidney failure. (R. at 41.) Plaintiff stated he has no GED. (*Id*.)

Plaintiff further testified that he has had only one functioning kidney since undergoing kidney transplant surgery in 1998. (R. at 34.) Plaintiff stated that his kidney "just doesn't give me the strength" and opined, "I don't think it filters all the toxins like a healthy person would." (R. at 35.) Plaintiff testified that he goes to bed as soon as the sun goes down, usually between six and eight o'clock in the evening, and gets up when it comes up, usually between seven and nine o'clock in the morning. (*Id*.) Plaintiff also testified that approximately once a night he wakes up with night sweats. (*Id*.)

2

Plaintiff testified that in a normal day, he wakes up, takes his medicine, showers, watches the news, and then gets something to eat around mid-morning.  (R. at 36.)  Plaintiff testified that 2-3 times a week he takes a nap up to three hours long after eating.  (R. at 49.)  Plaintiff stated that he spends the next few hours doing "little chores," reading, and watching television.  (R. at 36.)  Plaintiff also stated that he has no hobbies that hat he rarely leaves the house.  (R. at 50.)  According to Plaintiff he goes to the grocery store about once a month and drives himself.  (*Id*.)

Plaintiff testified that he formerly worked as a laborer in the heating and air conditioning business and "lifted things and did work" but now has problems lifting things due to weakness.  (R. at 37.)   Plaintiff also testified that no doctor has given him any restriction on lifting.  (R. at 37-38.)  Plaintiff further testified that osteoporosis causes his hips begin to hurt after sitting for approximately 45 minutes.  (R. at 38.)  Plaintiff stated, "I'm supposed to be taking a medicine for it.  But I can't afford it."  (*Id*.)  According to plaintiff "[g]oing up stairs or down stairs or standing too long, walking in general" all aggravate his hip condition.  (R. at 47.)  Plaintiff opined that he can stand in one place for two minutes and walk for less than a quarter mile without pain before he must sit for approximately 45 minutes.  (*Id*.)

Plaintiff also testified that he suffers from gout.  (R. at 39.)  According to Plaintiff, he takes medicine for gout, but still experiences recurrences in both feet, the last of which occurred approximately three weeks before the administrative hearing.  (*Id*.)  Plaintiff testified that he experiences approximately three severe "flare-ups" a year that last up to three weeks and cause his feet to "swell up and they'll feel like they're broken."  (R. at 45-46.)  According to Plaintiff, when he has a flare-up, he has trouble standing and walking.  (R. at 46.)  Plaintiff also stated that when he has a flare-up, he does not go to see the doctors but rests and elevates his feet.  (*Id*.)

3

Plaintiff testified that he experiences weakness in both hands going back to 2008.  (R. at 48.)  According to Plaintiff, he has difficulty writing, holding small objects, doing dishes, and opening jars.  (*Id*.)  Plaintiff stated that he drops something due to weakness in his hands approximately once every-other-week.  (R. at 49.)

Plaintiff further testified that in 2007 he received a blood transfusion because "I wasn't making the red blood cells like I should have.  I was having a rejection episode."  (R. at 39-40.)  Plaintiff stated that he currently takes several medications.  (R. at 43.)  According to Plaintiff, he suffers from side effects such as irritability, fatigue, and cataracts.  (R. at 44.)  Plaintiff testified that, since his cataract surgery, his visions with glasses is 20/20, but he has to wear bifocals for reading.  (R. at 45.)

## B.  The VE's Testimony

At the hearing, the ALJ stated that he determined that Plaintiff has no past relevant work. (R. at 51.)  The ALJ asked the VE to consider a hypothetical person who could lift ten pounds frequently, lift twenty pounds occasionally, stand for six hours and sit for six hours in an eight-hour day, who must avoid all exposure to unprotected heights, and is limited to jobs that have no more than three steps.  (R. at 52.)  The VE indicated that the hypothetical person could find unskilled work at the sedentary and light exertional levels.  (*Id*.)  According to the VE, at the medium exertional level, the hypothetical person could find work as a stock clerk, assembler, and medium machine operator.  (*Id*.)  The VE testified that, at the light exertional level, the hypothetical person could find work a light assembler, retailer labeler, and counter clerk in both the national and regional economies.  (R. at 52-53.)

4

The ALJ then asked the VE to consider a hypothetical person who could lift ten pounds frequently, lift twenty pounds occasionally, stand for six hours and sit for six hours in an eight-hour day, must avoid all exposure to unprotected heights, and is limited to three-step jobs.  (R. at 53.)  The ALJ specified that the hypothetical person must stand or walk for 3-4 minutes after every 45 minutes of sitting.  (*Id.*)  The VE testified that, at the sedentary level, the hypothetical person could find work as an order clerk, packager, and telephone clerk.  (R. at 54.)

The VE further testified that, if the hypothetical person could not complete an eight-hour work day and needed to be off-task 20% of the day, the hypothetical person would be precluded from gainful activity at any exertional level.  (R. at 56.)  The VE also testified that, if the hypothetical person was unable to work for two weeks three times per year, the hypothetical person would be precluded from working.  (*Id.*)  The VE further testified that a hypothetical person with Plaintiff's alleged hand weakness would not be able to work in any of the jobs identified in his testimony.  (R. at 57.)

### III.    MEDICAL RECORDS

#### A.  Elizabeth Davies, M.D.

On November 19, 2001, Plaintiff saw Dr. Davies for glomerulonephritis related to his kidney transplant.  (R. at 226.)  Dr. Davies noted that Plaintiff had last visited the office in June 2000.  (*Id.*)  According to Dr. Davies, Plaintiff provided "only" six labs since then.  (*Id.*)  Dr. Davies described Plaintiff's "noncompliance" with medical advice as follows:

> He states that he misses his medication on at least a three times a month basis.  It is generally all of his afternoon meds.  He states this occurs because he falls asleep and forgets to take his medications.  Apparently, in the past, he has followed with Dr. Hernandez, but they no longer see eye to eye and he is not seeing him currently.

(*Id.*)  Plaintiff reported no urinary tract infections and no hip pain.  (*Id.*)  Dr. Davies made no changes to his treatment plan.  (*Id.*)

Dr. Davies again saw Plaintiff on July 12, 2004.  (R. at 227-228.)  According to Dr. Davies, Plaintiff had not been to the office since February 2002.  (R. at 227.) Dr. Davies indicated that Plaintiff was incarcerated for part of that time.  (*Id.*)  Plaintiff complained of buttock pain that occasionally radiated down the surface of his thighs.  (*Id.*)  Plaintiff admitted to missing his medications "every other month, usually at night" due to falling asleep.  (*Id.*)  Dr. Davies reported, "I am somewhat concerned that his compliance is less than he admits.  He does admit that he is not routinely checking his blood pressure."  (R. at 227-228.)  Dr. Davies made no changes to Plaintiff's treatment.  (R. at 228.)

**B.  Todd E. Pesavento, M.D.**

On February 5, 2002 Dr. Pesavento took a biopsy of Plaintiff's kidney due to indications of rejection.  (R. at 231, 235.)

On February 23, 2007 Plaintiff was admitted to Ohio State University Medical Center for 12 days to treat acute rejection of his transplanted kidney.  (R. at 238, 243.)  Plaintiff was discharged on March 7, 2007 after completing his course of treatment.  (R. at 240.)  Plaintiff reported "no complaints."  (*Id.*)

**C.  D. Kohler, Ph.D.**

On April 8, 2011, Dr. Kohler conducted a psychological assessment of Plaintiff.  (R. at 261-265.)  Plaintiff reported that he is able to cook, clean, do laundry, drive, and manage money.  (R. at 262.)  Plaintiff also reported that he "could" shop, but "mom does it."  (*Id.*)  Plaintiff stated that exercise causes his joints to hurt.  (*Id.*)

**D. Shelly Dunmyer, M.D.**

On April 18, 2011, Dr. Dunmyer conducted a physical functional capacity assessment. (R. at 269-270.) Dr. Dunmyer opined that Plaintiff could stand two hours in an 8-hour workday and one hour without interruption. (R. at 270.) Dr. Dunmyer further opined that Plaintiff could sit for three hours in an 8-hour workday and two hours without interruption. (*Id*.) Dr. Dunmyer also opined that Plaintiff can lift up to 10 pounds frequently in an 8-hour workday. (*Id*.) According to Dr. Dunmyer, Plaintiff is moderately limited in pushing, pulling, bending, and reaching and is not significantly limited in handling. (*Id*.) Dr. Dunmyer stated that her physical exam findings are based on Plaintiff's report of symptoms and abilities. (*Id*.)

## IV. THE ADMINISTRATIVE DECISION

On February 12, 2013, the ALJ issued his decision. (R. at 13.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not attained the age of 22 as of,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

or engaged in substantial gainful activity since, November 1, 1997, the alleged onset date. (R. at 15.)

The ALJ found that Plaintiff had the severe impairments of chronic renal failure and affective disorder. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) At step four of the sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can only occasionally climb ladders, ropes and scaffolds. He must have a sit stand option in a work setting that allows him to stand or walk for 3 to 4 minutes after sitting for 45 minutes. He must avoid all exposure to unprotected elevations. He can perform the mental demands of jobs that have one, two, or three steps.

(R. at 18.) In reaching this determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.*)

With respect to Plaintiff's weakness, the ALJ found that objective medical evidence does not support Plaintiff's subjective complaints. (R. at 19.) The ALJ noted that the reports of Plaintiff's treating and examining physicians does not document the level of weakness that Plaintiff describes. (*Id.*) Specifically, the ALJ explained that, other than the acute rejection in April 2007, Plaintiff presented no evidence that his body is rejecting the kidney transplant; that

---

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

he has experienced side effects from his condition or treatment; that he has the alleged level of difficulty using his hands; that he has received treatment for his gout; or, that his gout occurs with the frequency and causes the degree of limitation he claims.  (*Id*.)

The ALJ gave Dr. Dunmyer's opinion evidence "no weight."  (*Id*.)  The ALJ noted that Dr. Dunmyer's opinion regarding Plaintiff's ability to walk, stand, lift and carry is not supported by objective medical evidence.  (*Id*.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*

9

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

### A.  The ALJ's Weighing of the Medical Evidence

In Plaintiff's statement of errors, Plaintiff contends that the ALJ's RFC analysis was flawed.  Within this contention of error, Plaintiff argues that the ALJ improperly accorded Dr. Dunmyer's opinion evidence "no weight."  (ECF No. 14 at 8.)  In evaluating a claimant's case, the ALJ must consider all medical opinions that he or she receives.  20 C.F.R. § 416.927(c). Medical opinions include any "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory

10

diagnostic techniques and is not inconsistent with the other substantial evidence in the

[claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

　　　If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ

must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544

(6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling

weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment
> relationship and the frequency of examination, the nature and extent of the
> treatment relationship, supportability of the opinion, consistency of the opinion
> with the record as a whole, and the specialization of the treating source—in
> determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination

or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. §

416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550

(6th Cir. 2010) (internal quotation omitted).  The Sixth Circuit has stressed the importance of the

good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the
> disposition of their cases," particularly in situations where a claimant knows that
> his physician has deemed him disabled and therefore "might be especially
> bewildered when told by an administrative bureaucracy that she is not, unless
> some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 f.3d 128,
> 134 (2d Cir. 1999).  The requirement also ensures that the ALJ applies the treating
> physician rule and permits meaningful review of the ALJ's application of the rule.
> *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45.  Thus, the reason-giving requirement is "particularly important when

the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of*

11

*Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).  There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).

The ALJ noted, and Plaintiff does not dispute, that Dr. Dunmyer is not a treating source, but rather an examining source, who saw Plaintiff only once, on April 18, 2011.  (R. at 19; ECF No. 14 at 8.)  The ALJ also noted that Dr. Dunmyer's conclusions are not supported by objective medical evidence.  (R. at 19.)  As noted above, Dr. Dunmyer based her physical functional capacity assessment on Plaintiff's report of his symptoms and limitations.  A review of the record reveals that Plaintiff provided no other medical evidence that could corroborate Dr. Dunmyer's findings.  It is proper to discount opinions based only on Plaintiff's subjective complaints and not otherwise supported by other medical evidence.  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009).  The Undersigned finds, therefore, that the ALJ properly applied the *Wilson* factors with respect to Dr. Dunmyer's opinion evidence and that substantial evidence supports his conclusion.

## B.  Plaintiff's Credibility and the ALJ's 96-7p Factor Analysis

In his next statement of error, Plaintiff challenges the ALJ's credibility analysis with respect to Plaintiff's subjective allegations of weakness, gout, and osteoporosis.  (ECF No. 14 at 8.)  Specifically, Plaintiff argues that the ALJ inappropriately rejected Plaintiff's subjective evidence as inconsistent with other evidence of record and improperly applied the SSR 96-7p factors.  (*Id.*)  He contends the ALJ based his determination on an "intangible or intuitive notion" regarding his credibility.  (*Id.*)

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "'with respect to [a claimant's] subjective complaints.'" *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Storey v. Comm'r of Soc. Sec.*, No. 98-1628, 1999 WL

282700, at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In evaluating Plaintiff's credibility with respect to his subjective claims, the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Kalmbach v. Comm'r or Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Pursuant to SSR 96-7p, the ALJ must evaluate seven factors in determining credibility:

> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

14

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186  (July 2, 1996).

SSR 96–7p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

**1.  Plaintiff's Daily Activities**

In his opinion, the ALJ characterizes Plaintiff's activities of daily living as mildly restricted because he "independently performs a wide range of activities."  (R. at 17.)  Plaintiff reported that he lives alone and is able to perform household chores, drive, and manage his money.  (R. at 17, 262.)  Plaintiff testified that, in the course of a normal day, he takes his medications, showers, watches television, and does chores.  (R. at 17, 36.)  A finding that Plaintiff's reported activities of daily living conflict with claims of functional limitations is a reasonable basis to discount credibility.  *Tyrpak v. Astrue*, 858 F. Supp. 2d 872, 886 (N.D. Ohio 2012).  The Undersigned finds that, although Plaintiff has shown limited activities of daily living, substantial evidence supports the ALJ's conclusion that they are not as limited as he alleges.

**2.  Location, duration, frequency, and intensity of Plaintiff's symptoms**

The ALJ concluded that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."  (R. at 18.)  As discussed above, Dr. Dunmyer based her physical functional capacity assessment on Plaintiff's self-reported

symptoms and limitations and no other medical evidence corroborates her conclusions.  Other

than the April 2007 kidney transplant rejection treatment, Plaintiff has received no treatment for

rejections.  (*Id*.)  Furthermore, the record does not contain evidence of Plaintiff's "allegations of

difficulty using his hands."  (*Id*.)  Last, the frequency and degree of limitation caused by

Plaintiff's gout is not documented in the record, although Plaintiff did report gout symptoms.  (R.

at 18, 39.)

      The Undersigned finds that substantial evidence supports the ALJ's credibility finding

with respect to the location, duration, frequency, and intensity of Plaintiff's symptoms.

### 3.  Factors that precipitate and aggravate Plaintiff's symptoms

      Plaintiff does not allege specific factors that precipitate or aggravate his symptoms.

### 4. The type, dosage, effectiveness, and side effects of Plaintiff's medications

      As the ALJ observed, the record contains no evidence, other than the April 2007

rejection, that Plaintiff has experienced any side effects from his kidney transplant or treatment.

(R. at 19.)  Although Plaintiff has alleged side effects from his medications, the treatment records

do not contain corroborating evidence.  (R. at 44.)  Plaintiff did suffer cataracts because of his

Prednisone treatment, but he testified at the administrative hearing that his corrected vision is

currently 20/20.  (R. at 45.)  Plaintiff testified that he takes medication to control his gout, but he

did not testify to any side effects.  (R. at 39.)  Moreover, Plaintiff testified that he does not take

his osteoporosis medication because he cannot afford it, not because of any side effects.  (R. at

38.)  The Undersigned finds that substantial evidence supports the ALJ's credibility finding with

respect to the effectiveness and side effects of Plaintiff's medications.

### 5. Treatment, other than medication, Plaintiff receives or has received

Plaintiff presented no evidence of treatment other than medication for his conditions. Ordinarily, a Plaintiff alleging medical conditions so severe as to be disabling would be expected to seek medical treatment.  A failure to do so is a reasonable basis upon which the ALJ may discount Plaintiff's credibility.  *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).  The Undersigned finds that substantial evidence supports the ALJ's credibility finding with respect to Plaintiff's treatment other than medication.

**6.  Any measures other than treatment Plaintiff uses or has used to relieve symptoms**

Plaintiff testified that when he experiences a gout attack, he does not visit the doctor or alter his medication.  (R. at 46.)  Rather, Plaintiff stated that he rests and elevates his feet.  (*Id.*) Plaintiff presented no evidence of measures other than treatment to relieve his other symptoms. The Undersigned finds that substantial evidence supports the ALJ's credibility finding with respect to measures other than treatment.

**7.  Other factors concerning Plaintiff's functional limitations and restrictions**

The ALJ noted several additional factors that weigh against Plaintiff's credibility.  The ALJ observed that "[h]is allegations of disability are also belied by his noncompliance with treatment regimens and infrequent examinations."  (R. at 19.)  A review of the record reveals only a handful of visits to the doctor over the span of more than a decade despite claims of significant impairments and serious medical complications.  Plaintiff himself testified that he experiences, on average, three attacks of gout a year, each lasting up to three weeks, but he does not seek medical treatment for them.  (R. at 46.)  Plaintiff's non-compliance with prescribed treatments is a reasonable basis upon which to discount credibility.  *Tyrpak*, 858 F. Supp. 2d at

880-881.  The Undersigned finds that substantial evidence supports the ALJ's credibility finding with respect to other factors concerning Plaintiff's functional limitations and restrictions.

In evaluating Plaintiff's subjective complaints, the ALJ properly applied the 96-7p factors and found "contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531.  The ALJ's assessment of credibility, therefore, is entitled to "great weight and deference."  *Infantado*, 263 F. App'x at 475.  Accordingly, the Undersigned finds that the ALJ offered good reasons for finding the Plaintiff not entirely credible and that substantial evidence supports those reasons.

## C.  The ALJ's RFC Determination

In his third statement of error, Plaintiff contends that the ALJ's RFC set forth in his three hypothetical questions is "based [only] on his interpretation of the evidence," rather than based on all of the relevant medical and other evidence as required by 20 C.F.R. §§ 404.1545(a) & 416.945(a).  (ECF No. 8 at 8.)  In particular, Plaintiff argues that the ALJ's RFC is "inconsistent with the opinion of examining physician, Dr. Shelly Dunmyer . . . and failed to take into consideration the testimony of the Plaintiff."  (*Id*.)

With respect to Plaintiff's testimony, as discussed above, the ALJ properly applied the SSR 96-7p factors and determined that Plaintiff is less than completely credible.  Furthermore, as discussed above, the ALJ properly gave little or no weight to Dr. Dunmyer's opinion evidence regarding Plaintiff's functional limitations.

Plaintiff bears the burden of providing the necessary medical evidence to demonstrate his impairments cause functional limitations resulting in disability.  20 C.F.R. §404.1512(c).  Where, as here, the ALJ has properly considered Plaintiff's evidence and substantial evidence supports

18

his conclusion, "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005.)  For the reasons explained above, therefore, the Undersigned finds that the ALJ properly considered all of Plaintiff's impairments at Step Four of the sequential evaluation process and that substantial evidence supports his RFC.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned finds that substantial evidence supports the ALJ's decision denying benefits.  Accordingly it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

19

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: August 9, 2016                      ___/s/ Elizabeth A. Preston Deavers____
                                           ELIZABETH A. PRESTON DEAVERS
                                           UNITED STATES MAGISTRATE JUDGE